IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ROGELIO AMILCAR CABRERA DIAZ, et al., )
   on Behalf of Themselves and All Others )
   Similarly Situated, )
   )
         Petitioners, )   No. 1:17-cv-1405 (LMB/MSN)
   )
      v. )
   )
RUSSELL HOTT, Field Office Director, U.S. )
   Immigration and Customs Enforcement, et al., )
   )
         Respondents. )

## MEMORANDUM OPINION

Before the Court is petitioners' Motion to Certify Class [Dkt. No. 11] and Motion for Summary Judgment [Dkt. No. 16] as well as respondents' Motion for Summary Judgment [Dkt. No. 21]. For the reasons that follow, petitioners' motions will be granted and respondents' motion will be denied.

### I. BACKGROUND

Petitioners Rogelio Amilcar Cabrera Diaz ("Cabrera Diaz"), Jennry Francisco Moran Barrera ("Moran Barrera"), and Rodolfo Eduardo Rivera Flamenco ("Rivera Flamenco") (collectively, "petitioners") have filed a class action habeas corpus petition pursuant to 28 U.S.C. § 2241, seeking class action certification and an order directing respondents Russell Hott ("Hott"), the Field Office Director for U.S. Immigration and Customs Enforcement ("ICE"), and Jefferson B. Sessions, III ("Sessions"), the Attorney General of the United States of America, (collectively, "respondents") to grant the class members bond hearings.

The relevant facts are simple and undisputed. Each individual petitioner has been removed from the United States under an order of removal. Second Am. Pet. for Writ of Habeas

Corpus [Dkt. No. 4] ¶¶ 13, 19, 23. When each petitioner returned to his native country (two of the petitioners are from El Salvador and one is from Honduras), he received death threats. Id. ¶¶ 14, 20, 24. As a result, each petitioner returned to the United States without permission from the appropriate authorities. Id. ¶¶ 15, 20, 25. Each petitioner has been issued a Notice of Intent/Decision to Reinstate Prior Order, which reinstated the prior order of removal and rendered him deportable, and each has been detained by ICE at Immigration Centers of America-Farmville (in Farmville, Virginia) since such issuance. Id. ¶¶ 17, 21-22, 25. Each petitioner has expressed a fear of returning to his native country and, after either an asylum officer or an immigration judge ("IJ") determined that he had a reasonable fear of persecution or torture, he was placed in withholding-only proceedings, which remain pending. Id. ¶¶ 18, 22, 26.

Petitioners believe that they, and other detainees who are similarly in withholding-only proceedings, are entitled under the Immigration and Nationality Act ("INA") to bond hearings, because they believe that 8 U.S.C. § 1226, not 8 U.S.C. § 1231, provides the source of authority for their detention. Id. ¶¶ 41-44. This Court has agreed. See Romero v. Evans, __ F. Supp. 3d __, No. 1:17-cv-754, 2017 WL 5560659 (E.D. Va. Nov. 17, 2017). Accordingly, petitioners seek to represent a class of all individuals:

> who are in 'withholding-only proceedings, having established a reasonable fear of persecution or torture, and such proceedings are not administratively final, or if final, a stay of removal has been granted by a U.S. Court of Appeals, and
>
> who, as of the time of filing the initial pleading in this case or at any time thereafter, are detained by, or on the authority of, U.S. Immigration and Customs Enforcement, within the state of Virginia.

Id. ¶ 47. Respondents disagree that class certification is appropriate and that petitioners are being held pursuant to § 1226. Accordingly, petitioners have filed a Motion for Class

2

Certification [Dkt. No. 11] and each party has filed a Motion for Summary Judgment [Dkt. Nos. 16 & 21].

## II. DISCUSSION

### A. Standard of Review

A party is entitled to summary judgment if the party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In general, bare allegations or assertions by the nonmoving party are not sufficient to generate a genuine dispute; instead, the nonmoving party must produce "significantly probative" evidence to avoid summary judgment. Abcor Corp. v. AM Int'l, Inc., 916 F.2d 924, 929-30 (4th Cir. 1990) (quoting Anderson, 477 U.S. at 242). That being said, in ruling on a motion for summary judgment, a court should accept the evidence of the nonmovant, and all justifiable inferences must be drawn in her favor. Anderson, 477 U.S. at 255.

Class certification is appropriate under Fed. R. Civ. P. 23 if petitioners can show that there are sufficiently numerous parties ("numerosity"); there are questions of law or fact common to the class ("commonality"); the claims or defenses of the named petitioners are typical of the claims or defenses of the class ("typicality"); and the named petitioners will fairly and adequately protect the interests of the class ("adequacy"). In addition, a proposed class must qualify under Rule 23(b)(1), (2), or (3). Petitioners seek certification under Rule 23(b)(2), which permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

3

**B. Summary Judgment**

As both parties agree, all relevant facts in this action are undisputed and the resolution of the habeas petition turns on a pure question of law: whether ICE's authority to detain petitioners arises from 8 U.S.C. § 1226, as petitioners contend, or 8 U.S.C. § 1231, as respondents contend. If petitioners are held under § 1226, they are entitled to a bond hearing under § 1226(a) unless the government determines that they are criminal aliens subject to mandatory detention under § 1226(c).[1] If petitioners are held under § 1231, they are subject to mandatory detention without a bond hearing.[2] Petitioners rely on an opinion from this Court, as well as a Second Circuit opinion, holding that aliens in petitioners' position are detained under § 1226 and are entitled to bond hearings. See Romero, __ F. Supp. 3d __, 2017 WL 5560659, appeal pending, No. 18-6086 (4th Cir.); see also Guerra v. Shanahan, 831 F.3d 59 (2d Cir. 2016). Respondents rely on Ninth Circuit and Eastern District of Virginia decisions holding that detainees in petitioners' position are detained under § 1231 and are not entitled to bond hearings. See Padilla-Ramirez v. Bible, 862 F.3d 881 (9th Cir. 2017); Crespin v. Evans, 256 F. Supp. 3d 641, No. 1:17-cv-140, 2017 WL 2385330 (E.D. Va. May 31, 2017), appeal dismissed as moot, No. 17-6835 (4th Cir. Feb. 23, 2018).[3]

---

[1] A petitioner classified as a criminal alien under 8 U.S.C. § 1226(c) would have the opportunity to challenge his classification in a hearing conducted under In re Joseph, 22 I. & N. Dec. 799 (BIA 1999), which gives an alien allegedly subject to mandatory detention the ability to seek a "bond ruling as to whether the alien is properly included in a mandatory detention category" from an IJ, id. at 800 (internal quotation marks omitted).

[2] The Supreme Court has recognized a limited due process right to release from mandatory detention in certain narrow circumstances. See Zadvydas v. Davis, 533 U.S. 678 (2001). Petitioners have declined to pursue a Zadvydas-based due process claim.

[3] At oral argument, counsel explained to the Court that the petitioner in Crespin was granted withholding of removal and was released from custody, which mooted Crespin before the Fourth Circuit could decide the appeal. Similarly, counsel explained that each of the three original petitioners in Romero has concluded withholding-only proceedings and that the appeal in that

4

The context of petitioners' detention and the legal claims raised by both parties involve the nature of reinstated final removal orders and the effect of withholding-only proceedings on those orders, as well as the statutes governing detention during and after removal proceedings.

1. Reinstated Removal Orders and Withholding-Only Proceedings

When an alien who has been ordered removed from the United States and has either been removed or departed voluntarily under the order of removal illegally reenters the country, the original order of removal "is reinstated from its original date." 8 U.S.C. § 1231(a)(5). Such an order "is not subject to being reopened or reviewed" and the alien "may not apply for any relief" from that order under the INA. See id. In general, this provision "forecloses discretionary relief from the terms of the reinstated order," Fernandez-Vargas v. Gonzales, 548 U.S. 30, 35 (2006); however, there is one exception to this rule. Congress has provided, consistent with the United States's obligations under international law, that the Attorney General may not remove an alien to a country where the alien's life or freedom would be threatened. See 8 U.S.C. § 1231(b)(3).[4] This restriction applies even to aliens with reinstated removal orders. See id. Therefore, although an alien cannot otherwise challenge a reinstated removal order, he can seek protection from having that order executed to a particular country by initiating a withholding-only proceeding.

When an alien subject to a reinstated removal order expresses a fear of removal to the country indicated in his removal order, the Department of Homeland Security ("DHS") refers the alien to an asylum officer for a pre-withholding screening interview. See 8 C.F.R. § 208.31(b). If

---

action will be moot once the IJ in the remaining petitioner's withholding-only proceedings formally enters an Order granting him relief.

[4] In addition to applying for withholding of removal under the statutory provision, aliens may also apply for withholding of removal under the Convention Against Torture. The standards for withholding are slightly different under the two provisions, but the process is the same. See 8 C.F.R. § 208.16.

5

the asylum officer determines that the alien "has a reasonable fear of persecution or torture," the alien may apply for withholding of removal. See id. § 208.31(e).[5]

If the alien passes this screening process, then the alien is permitted to apply for withholding or deferral[6] of removal and the application goes to an IJ for an initial review to determine whether the alien has met his burden.[7] Should the burden be met, the IJ will grant the alien's request for deferral or withholding of removal; however, if the IJ determines that the alien has not met his burden, the alien may appeal that determination to the Board of Immigration Appeals ("BIA") and, ultimately, to a federal court of appeals. In these "withholding-only" proceedings, the only issue is whether the alien is entitled to withholding or deferral of removal; the alien may not collaterally attack the underlying removal order. See id. §208.2(c)(3)(i).

In this litigation, each petitioner has passed the initial screening process, has applied for withholding of removal, and is in the process of applying to an IJ for an initial review of whether withholding or deferral of removal should be granted.

2. Statutes Governing Alien Detention

There are two separate provisions in the INA that give the government authority to detain aliens during removal proceedings or while awaiting the execution of an order of removal. When

---

[5] Alternatively, if the asylum officer determines that the alien has not established a reasonable fear, the alien can appeal that decision to an IJ. Id. § 203.31(f). If the IJ agrees with the asylum officer, the process ends (there is no appeal) and DHS will execute the reinstated removal order. Id. § 203.31(g)(1). If, on the other hand, the IJ finds the alien has established a reasonable fear of persecution or torture, then the alien may apply for withholding of removal. Id. § 203.31(g)(2).
[6] Under § 1231(b)(3), an alien applies for "withholding" of removal. Under the Convention Against Torture, an alien applies for "withholding or deferral" of removal. The difference is not relevant to this action.
[7] Under § 1231(b)(3), the alien bears the burden of establishing that "his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b). To qualify for protection under the Convention Against Torture, the alien bears the burden of showing it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." Id. § 208.16(c).

an alien is first arrested, he or she is detained under 8 U.S.C. § 1226(a), which allows DHS to "arrest[] and detain[]" the person "pending a decision on whether the alien is to be removed from the United States." Under this section, the alien may be released on bond;[8] however, once the "removal period" begins, the authority for detention shifts to 8 U.S.C. § 1231. The "removal period," which is typically a 90-day period[9] in which the alien ought to be removed, begins on the latest of three dates: (1) the "date the order of removal becomes administratively final"; (2) the "date of the court's final order" if "the removal order is judicially reviewed" and "a court orders a stay of the removal of the alien"; or (3) the "date the alien is released from detention or confinement" if "the alien is detained or confined (except under an immigration process)." Id. § 1231(a)(1)(B). During the "removal period," DHS "shall detain the alien." Id. § 1231(a)(2).

### 3. The Source of Authority to Detain Petitioners

The legal question presented by petitioners boils down to a deceptively simple question: Are petitioners detained under 8 U.S.C. § 1226 or under 8 U.S.C. § 1231?[10] Both parties employ a variety of statutory interpretation techniques to answer this question. In the end, although

---

[8] As discussed above, Congress has provided for mandatory detention for some aliens with certain criminal convictions who would otherwise be detained under § 1226(a) and entitled to a bond hearing. See 8 U.S.C. § 1226(c).

[9] There are some circumstances in which the removal period may be extended beyond 90 days. At a certain point after these 90 days, due process protections may require a bond hearing or the release of the alien. Cf. Zadvydas, 533 U.S. 678. To implement these protections, DHS has instituted regulations governing post-removal-order custody reviews. See 8 C.F.R. § 241.4. These regulations are not at issue in this action.

[10] Respondents appear to believe that the relevant question in this case is simply whether petitioners' removal orders are "administratively final"; if so, then the removal period has begun under § 1231 and petitioners are detained under that section. See Resp. Mem. [Dkt. No. 22] 12; see also Padilla-Ramirez, 862 F.3d at 884 ("The question before us, then, is whether Padilla-Ramirez's reinstated removal order is administratively final."). Although administrative finality is the relevant dividing line in § 1231, the Court must analyze both § 1226 and § 1231 and attempt to harmonize the two statutes rather than unduly focusing on the § 1231 provisions.

7

respondents' arguments have some force, the text, structure, and intent of the INA compel the conclusion that petitioners are detained under 8 U.S.C. § 1226.

Beginning with the statutory text, § 1226(a) governs detention for an alien "detained pending a decision on whether the alien is to be removed from the United States." As an initial matter, this text governs petitioners' detention because until withholding-only proceedings are complete, a decision has not been made on whether petitioners will in fact be removed from the United States. See Pet. Mem. [Dkt. No. 17] 6. As petitioners argue, § 1226(a) focuses not on a determination of removability (which has already been made) but instead on a more concrete determination of whether petitioners will actually be removed—a determination that has not yet been made in petitioners' cases. See id. As such, until the government determines that there is a country to which petitioners can legally be removed, the decision on whether they are "to be removed" remains "pending," and § 1226(a) governs their detention.

This conclusion is reinforced by the statutory structure of the INA and evidence of Congress's intent. Section 1231 provides that the removal period will begin on the latest of three dates: the date the removal order becomes final, the date any judicial stay stopping removal is lifted, or the date the alien is released from non-immigration detention. 8 U.S.C. § 1231(a)(1)(B). As petitioners explain, each of these three preconditions simply relates to a different legal impediment to actual removal: either DHS has not completed its own removal process (the order is not final) or the judicial branch has deprived DHS of authority to execute the removal process (a judicial stay stopping removal is in place) or the criminal authorities, rather than ICE, have custody of the individual and ICE does not have jurisdiction to remove the noncitizen (the alien is in non-immigration detention). In each situation, DHS may have already determined that the

noncitizen is, like petitioners here, removable, but ICE lacks the present and final legal authority to actually execute that order of removal.

Moreover, Congress clearly intended to have § 1231 govern only the final logistical period, in which the government has actual authority to remove the alien and need only schedule and execute the deportation. Congress has specifically limited the normal "removal period" to 90 days, a limitation that makes sense if the removal period is only meant to govern the final logistical steps of physically removing an alien. Based on the length of petitioners' detentions to date, see Second Am. Pet. ¶¶ 17, 21, 25, it is obvious that withholding-only proceedings take substantially longer than 90 days. As such, it would be contrary to congressional intent to shoehorn a class of aliens whose proceedings will typically far exceed 90 days into the "removal period" for which Congress has specifically intended a 90-day limit.

Background legal principles of finality also support petitioners' view. The INA limits judicial review to a "final order of removal," 8 U.S.C. §1252(a)(1), and aliens may appeal adverse decisions in withholding-only proceedings only "as part of the review of a final order of removal," id. § 1231 note (d). Addressing these statutes, many courts have held that a reinstated removal order is not final for purposes of judicial review until after the adjudication of any withholding applications, an interpretation the government has itself endorsed. See Pet. Mem. 7.[11] It would be nonsensical to adopt a "bifurcated definition of finality" with respect to removal orders in withholding-only proceedings. Guerra, 831 F.3d at 63. As such, the Court concludes

---

[11] Respondents argue that the Fourth Circuit has held that a reinstated removal order's date of finality is the date of the original entry of the order of removal, Resp. Mem. 25-26 (citing Mejia v. Sessions, 866 F.3d 573 (4th Cir. 2017)); however, that case involved the date of finality for determining whether a challenge to the underlying removal order was timely. It is not clear how the Fourth Circuit would analyze finality dates in the context of a challenge to the eventual withholding-only proceedings.

that reinstated removal orders do not become "administratively final" for purposes of § 1231 until they are final for purposes of appellate review.

Moving beyond the INA context, principles of administrative law support the conclusion that a reinstated removal order is not final until after the conclusion of any withholding-only proceedings. See Pet. Mem. 7. In agency law, finality is generally achieved when an action both "mark[s] the consummation of the agency's decisionmaking process" and also determines legal rights or obligations. Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted). In this case, although some legal rights or obligations have already been determined (the petitioners are removable), the decisionmaking process is ongoing—i.e., it has not been consummated—as the agency is still determining whether petitioners will be granted withholding of removal or will be removed. As such, under principles of administrative law, petitioners' removal orders are not "final"; therefore, petitioners are being detained under § 1226(a).

Respondents' arguments to the contrary are unavailing. First, they argue that the text of § 1226(a) supports their position because petitioners' removal orders have already been reinstated; as such, the decision on whether petitioners are "to be removed" is no longer "pending." Resp. Mem. 4. In addition, they argue that withholding-only proceedings only address the possibility of executing a removal order to a particular country but do not prohibit immediate removal of petitioners to a different country based on the reinstated orders. Id. at 14-15. This reasoning is incomplete. Although DHS may eventually be able to remove petitioners to some third country even if their application for withholding of removal is granted, third-country removal would require additional proceedings. At the least, DHS would be required to give petitioners notice and the opportunity for a hearing. Cf. Kossov v. INS, 132 F.3d 405, 408-09 (7th Cir. 1998). Moreover, the provision allowing for the removal of detainees to additional

countries, 8 U.S.C. § 1231(b)(2), places sharp limitations on the countries that the government may designate for removal—and respondents have not shown that there are any countries that meet those limitations for petitioners. Finally, as a practical matter, the United States of America generally cannot simply <u>sua sponte</u> deport an alien to a country where he or she does not have citizenship; instead, the government must typically get permission to deport from the third country. <u>Cf.</u> <u>Zadvydas</u>, 533 U.S. at 684 (explaining that the government could not deport the petitioner to Germany, Lithuania, or the Dominican Republic despite his ties to those countries because those countries would not accept him). As such, it is not clear at the present time that petitioners are in fact "to be removed" from the United States. All that is clear is that they are removable.

Turning to the text of § 1231(a)(5), respondents argue that the provision makes clear that the removal period has begun for petitioners. Because a reinstated removal order "is not subject to being reopened or reviewed," respondents argue that petitioners' removal orders are "administratively final" and petitioners are detained under § 1231. Resp. Mem. 15-17 (internal quotation marks omitted). This argument is unpersuasive. Although the INA indicates that reinstated removal orders are final in the ordinary case, other regulatory provisions that bear more closely on withholding-only proceedings emphasize that aliens in these proceedings are situated differently from the ordinary alien subject to a reinstated removal order. For example, 8 C.F.R. § 241.8(e) provides an "[e]xception" to the reinstatement-of-removal regulations when an alien applies for withholding of removal. In addition, the text of § 1231(a)(5) does not squarely answer the question presented. Indeed, § 1231(a)(5) does not even mention withholding-only proceedings, much less does it speak clearly to the source of the authority to detain individuals in those proceedings.

Therefore, petitioners are detained pursuant to 8 U.S.C. § 1226, not 8 U.S.C. § 1231, and summary judgment will be granted in their favor.

### C. Class Certification

Respondents do not challenge petitioners' ability to satisfy the numerosity and adequacy requirements, see Resp. Opp. [Dkt. No. 24] 7 n.2, but do argue that petitioners fail to satisfy the commonality and typicality requirements. They also argue that 8 U.S.C. § 1252(f)(1) precludes class certification under Rule 23(b)(2).

Commonality is satisfied if petitioners can identify a "common contention capable of being proven or disproven in 'one stroke.'" Brown v. Nucor Corp., 785 F.3d 895, 909 (4th Cir. 2015) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)); however, the "determination of [the common contention's] truth or falsity" must "resolve an issue that is central to the validity of each one of the claims," Wal-Mart Stores, 564 U.S. at 350. Petitioners argue that the central legal question presented by their habeas petition—whether individuals in withholding-only proceedings are detained pursuant to § 1226 or § 1231—is exactly such a question capable of common resolution in "one stroke." Respondents argue that because Judge Ellis and this Court have disagreed about the appropriate resolution of that question "and no Fourth Circuit decision has resolved the issue there can be no commonality to the cases and no common injury as Petitioners allege." Resp. Opp. 10. This argument is nonsensical. That courts might disagree on the appropriate resolution of this admittedly complex question of statutory interpretation does not change the fundamental nature of the question as one that is common to all individuals in the proposed class and that can be resolved in "one stroke."

In addition, respondents argue that petitioners have not met the commonality requirement because the proposed class "includes [criminal] aliens who would be subject to detention under

12

both 8 U.S.C. § 1226(a) and 8 U.S.C. § 1226(c)." Id. at 11. As discussed above, the fundamental question is whether individuals in withholding-only proceedings are detained under § 1226 or § 1231. Resolving that question is not dependent on whether a particular alien is subject to § 1226(c) and is therefore ineligible for bond. Accordingly, the core legal question raised by the petition is common among all members of the proposed class, regardless of whether any individual member is subject to § 1226(c).

With respect to the criminal aliens subject to mandatory detention under 8 U.S.C. § 1226(c), respondents also argue that aliens detained under § 1226(c) are generally permitted a Joseph hearing to challenge the basis of their mandatory detention and that the issues presented in a Joseph hearing will often implicate the core question of removability because the grounds for mandatory detention and for removability often overlap. Id. at 11-12. Because individuals in withholding-only proceedings may not challenge their underlying order of removal, respondents appear to argue that it would be inappropriate to allow them to access Joseph hearings. See id. This argument is unavailing. It is clear that individuals in withholding-only proceedings may not legally challenge the reinstated order of removal; however, if the government determines that any particular covered individual is subject to mandatory detention under § 1226(c), there is no reason that the individual could not challenge that determination in a Joseph hearing as long as doing so does not require him to challenge the underlying removal order.[12] In addition, the potential Joseph wrinkle does not change the fundamentally common nature of petitioners' core contention: that they are detained under § 1226, not § 1231. Because a single common question

---

[12] To the extent that the classification decision is based on the underlying removal order, the individual alien may not have a substantive opportunity to challenge the determination; however, if the government seeks to detain individuals under § 1226(c) for reasons that are not based on the underlying removal order, then the individual has the opportunity to contest that determination just like any other alien detained pursuant to § 1226(c).

13

is sufficient to satisfy the commonality requirement, it is clear that petitioners have met that requirement.

Respondents' argument that petitioners also fail to satisfy the typicality requirement is unavailing for the same reasons. As respondents concede, the "commonality and typicality requirements occasionally merge" because both relate to the question whether the claims of class members and, particularly the claims of the named class members vis-à-vis the claims of the rest of the class, are so interrelated that class certification is economical and fair. Resp. Opp. 13. Respondents argue that petitioners are not typical because none of them is subject to mandatory detention under § 1226(c) and, therefore, petitioners seek only bond hearings and not Joseph hearings in their individual cases; however, as discussed above, the core legal question raised by the petition is the same across all class members.[13] As such, the named petitioners are typical of the class in the relevant ways, even if there may be some differences between their situations and some of the situations of other class members.[14]

Finally, respondents argue that 8 U.S.C. § 1252(f)(1) precludes class certification because it prohibits class-wide injunctive relief. Section 1252(f)(1) states, in full: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the

---

[13] Petitioners also note that a "Joseph hearing" is "simply shorthand for a bond hearing which involves the threshold question of whether the noncitizen is subject to mandatory detention," which suggests that a bond hearing and a Joseph hearing are substantially similar. Pl. Reply [Dkt. No. 27] 6-7.

[14] In addition, as discussed at oral argument, class certification in petitioners' circumstance is both economical, as there are apparently nearly 50 potential class members at any one time who could file individual habeas petitioners, and necessary to allow the Fourth Circuit to decide the important legal question presented in this petition, because experience demonstrates that individual claims are often rendered moot during the appellate process.

operation of the provisions of part IV of this subchapter,[15] as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." Although this provision does prohibit class-wide injunctive relief in some circumstances, the prohibition is limited to injunctions "against the operation of" the relevant INA provisions. Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 481 (1999). Petitioners are not seeking an injunction "against the operation of" the INA but are instead seeking an injunction requiring respondents to comply with the terms of the INA, as interpreted by this Court. Accordingly, § 1252(f)(1), by its terms, does not act as a bar to class-wide relief in this civil action. See also Abdi v. Duke, __ F. Supp. 3d __, 2017 WL 5599521, at *26 (W.D.N.Y. Nov. 17, 2017); R.I.L.-R v. Johnson, 80 F. Supp. 3d 164, 184 (D.D.C. 2015); Preap v. Johnson, 303 F.R.D. 566, 584 (N.D. Cal. 2014), aff'd, 831 F.3d 1193 (9th Cir. 2016).

Therefore, petitioners meet each of the necessary requirements for class certification and their motion will be granted.

III. CONCLUSION

For the reasons stated above, petitioners' Motion to Certify Class [Dkt. No. 11] and Motion for Summary Judgment [Dkt. No. 16] will be granted and respondents' Motion for Summary Judgment [Dkt. No. 21] will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 26th day of February, 2018.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

---

[15] Part IV includes both § 1226 and § 1231.

15